IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LASER DESIGN INTERNATIONAL, LLC; NORWOOD OPERATING COMPANY,<br><br>    Plaintiffs,<br><br>  v.<br><br>BJ CRYSTAL, INC, a California corporation; CASHMAN PHOTO ENTERPRISES OF NEVADA, a Nevada corporation; CRYSTAL MAGIC, INC., a Florida Corporation; U.C. LASER, INC., a New Jersey corporation; VITRO LASER GROUP U.S.A., INC., a Nevada corporation; JIMAC MARKETING INC., a Canadian corporation; CONCORD INDUSTRIES, INC., a Connecticut corporation; C. STIEFELMAYER GMBH & Co. KG, a German limited partnership; CERION GMBH, a German limited liability company; CRYSTAL CAPTURE INC., a Texas corporation; CRYSTAL CAPTURE INTERNATIONAL, LLC, a Nevada limited liability company; G.W. PARTNERS INTERNATIONAL, INC., a California corporation; HIRSCH GIFT INC., a Texas corporation; VISIONS IN CRYSTAL, INC., a California corporation; VITRO LASER GMBH, a German limited liability company,<br><br>    Defendants. | Lead Case No. C 03-1179 JSW<br>Consolidated with No. C 03-3905 JSW<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION; (2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE; AND (3) DENYING DEFENDANT'S MOTION FOR LEAVE TO SERVE REBUTTAL EXPERT REPORT** |
| AND RELATED COUNTERCLAIMS | |

Now before the Court are plaintiff Laser Design International, LLC's ("Plaintiff") motions for summary adjudication and to strike and defendant Crystal Magic, Inc.'s ("Crystal

Magic") motion for leave. Having carefully considered the parties' arguments and relevant legal authority, the Court: (1) grants in part and denies in part Plaintiff's motion for summary adjudication; (2) grants in part and denies in part Plaintiff's motion to strike; and (3) denies Crystal Magic's motion for leave.[1]

**BACKGROUND**

The U.S. Patent No. 5,206,496 (the "'496 patent") relates to a method and apparatus for making sub-surface marks inside a transparent object. ('496 patent at Abstract). Plaintiff is moving for summary adjudication that defendant Crystal Magic, Inc. ("Crystal Magic") is practicing the invention of claims 5, 23, 29, 45, 51 of the '496 patent and that Crystal Magic is not entitled to the defense of intervening rights.

The original '496 patent was issued on April 27, 1993. On March 25, 1997, plaintiff Laser Design International, LLC and two other entities filed suit in the United States District Court for the Northern District of California, entitled *Laser Design International, LLC, et al. v. Scanova Limited, et al.*, No C 97-20274 ("1997 litigation"). Judge Ronald M. Whyte issued an order on claims construction of the '496 patent and on summary judgment in which Judge

---

[1] On March 1, 2007, the Court issued an order in which it found that Plaintiff's motions for summary judgment and to strike and Crystal Magic's motion for leave to serve an expert rebuttal report were appropriate for disposition without oral argument and thus vacated the hearing set for March 2, 2007 on these matters. Hearings are not mandatory. Rather, the decision of whether or not to hold a hearing on noticed motions is within the Court's discretion. *See* Civ. L.R. 7-1(b). Nevertheless, both parties used the order vacating the hearing as an opportunity to submit additional evidence and argument regarding the pending motions. "[O]nce a reply is filed, no additional memoranda, papers, or letters may be filed without prior Court approval." *See* Civ. L.R. 7-3(d).

Plaintiff seeks to submit excerpts from the transcript of Dr. Eric Van Stryland's deposition taken on February 23, 2007. The transcript did not become available until February 28, 2007. Although Plaintiff has a justification for not providing the transcript sooner, the Court declines to consider such additional evidence. Because the Court is striking Dr. Van Stryland's declaration and not allowing Crystal Magic to serve his expert report, the Court need not consider his deposition testimony with respect to Plaintiff's motion for summary adjudication on infringement. Because the Court finds that there is a question of fact with respect to Crystal Magic's affirmative defense of intervening rights, considering additional evidence would not alter the Court's conclusion on this issue.

In addition to excerpts from Dr. Van Stryland's deposition, Crystal Magic seeks to provide excerpts from the deposition of Plaintiff's expert Dr. Robert Clement taken in early February. Crystal Magic does not provide any explanation as to why it did not move sooner to submit such additional evidence. Furthermore, review of such evidence indicates that it would not alter the Court's decision on the parties' motions. Accordingly, the Court declines to provide leave to file such evidence. The Court HEREBY DENIES the administrative motions by both Plaintiff and Crystal Magic.

2

1 Whyte addressed additional claim construction issues of the '496 patent. (Declaration of Elaine
2 Stracker in Support of Summary Adjudication ("Stracker Decl. I"), Exs. 5, 6.) The 1997
3 Litigation settled before trial pursuant to a Consent Judgment filed on September 8, 1999. (*Id*.,
4 Ex. 7.)

5 The Patent Office subsequently issued a Reexamination Certificate on the '496 patent.
6 (*Id*., Ex. 9-11.) The Court will address the additional specific facts as required in the analysis.

## ANALYSIS

**A.    Plaintiff's Motion to Strike and Crystal Magic's Motion for Leave.**

Plaintiff moves pursuant to Federal Civil Rule 37(c)(1) ("Rule 37") to strike the declarations of Crystal Magic's president, Steven M. Rhodes, and Crystal Magic's expert, Dr. Eric Van Stryland, submitted by Crystal Magic in opposition to Plaintiff's motion for summary adjudication in violation of Federal Rule of Civil Procedure 26(a) ("Rule 26"). Plaintiff argues that such declarations were submitted after the deadline for submitting expert reports and thus should be stricken. Crystal Magic moves for leave to serve a expert report by Dr. Eric Van Stryland after the deadline for such reports has expired.

Rule 26 requires parties to disclose the identity of their expert witnesses "accompanied by a written report prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B). Parties are required to serve their opening and expert rebuttal reports "at the times and in the sequence directed by the court." Fed. R. Civ. Proc. 26 (a)(2)(c). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."[2] *Yetti by Molly Ltd v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). This rule excludes untimely expert witness testimony, unless the "parties' failure to disclose the required information is substantially justified or harmless." *Id*.; *see also Carson Harbor Village, Ltd. v. Unocal Corp.*, 2003 WL 22038700, *2 (C.D. Cal. 2003) ("Excluding expert evidence as a sanction for failure to disclose expert witnesses in a timely

---

[2] Rule 37 provides in pertinent part: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. Proc. 37(c)(1).

3

1 fashion is automatic and mandatory unless the party can show the violation is either justified or
2 harmless.") (internal quotes and citation omitted).  Crystal Magic bears the burden of
3 demonstrating its failure was either substantially justified or harmless. *Yetti by Molly*, 259 F.3d
4 at 1107.

### 1. Expert Versus Lay Testimony.

Crystal Magic argues that the declarations of Dr. Van Stryland and Mr. Rhodes do not provide expert testimony.  Pursuant to Federal Rule of Evidence 701, lay witnesses may testify based upon their experience, but they may not provide opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701; *see also United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) (holding that opinion by lay witness on observations that were not "common" but required demonstrable expertise was improper).  The purpose of this limitation is "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."  Fed. R. Evid. 701 Advisory Committee Notes (2000 Amendment).  Thus, "[t]he mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702."  *Figueroa-Lopez*, 125 F.3d at 1246.

With respect to Dr. Van Stryland, the Court finds Crystal Magic's position is disingenuous considering that it seeks leave to submit substantially the same information as an expert rebuttal report in its motion for leave. (*Compare* Declaration of Eric Van Stryland, Ph. D. ("Van Stryland Decl.") at ¶¶ 2-8 *with* proposed Expert Report of Eric Van Stryland, Ph. D., attached as Ex. 1 to the Declaration of Scott Eads re Reply in Support of Motion for Leave, at ¶¶ 12-18.)  In his declaration, Dr. Van Stryland states that he has been retained as an expert in the field of optics and lasers by Crystal Magic and describes his findings regarding magnified photographs of marks in glass blocks provided by Mr. Rhodes.  (Van Stryland Decl. at ¶¶ 1-8.) Dr. Van Stryland explained that he examined one of the glass blocks "under a Zeiss Axiolab microscope."  (*Id*. at ¶ 5.)  He "used a 5x (DIN 0.10 Edmonds) objective which when printed on [his] computer resulted in a magnification of ~170x."  (*Id*.)  His photographs show "different damage sites, as viewed from the 60mm x 60mm face.  According to Dr. Van Stryland:

4

> the damage sites appear to be between ~2x to 4x longer in the z-dimension than they are in the x-dimension . ... the deviation in the central position of the damage sites in the z-direction is quite large on the 0.44mm scale. Overall, the variability among the individual laser damage marks ... appear to demonstrate a significant degree of randomness and lack of control in the z-dimension, as compared to the x-dimension.

*Id.* at ¶ 7; *see also Id.* at ¶ 8 ("the glass blocks in Exhibits B and C appear to exhibit a significant degree of randomness and lack of control in the z-dimension, as compared to the x-dimension").

The Court finds that Dr. Van Stryland's declaration is based on scientific, technical, or other specialized knowledge and contains observations that required demonstrable expertise. Accordingly, it is not admissible as lay witness testimony and thus, the Court will address whether the failure to disclose his expert testimony was substantially justified or harmless.

The declaration of Mr. Rhodes presents a closer question with respect to whether the testimony is lay or expert testimony. While lay witnesses may be allowed to testify as to their personal knowledge of a particular invention or prior art, they may not "provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Fresenius Med. Care Holdings, Inc. v. Baxter Inter., Inc.*, 2006 WL 1330002, *3 (N.D. Cal. May 15, 2006) (quoting *U.S. v. Conn.*, 297 F.3d 548, 554 (7th Cir. 2002)). Upon review of Mr. Rhodes' declaration, the Court finds that he merely describes how the images were produced and does not provide specialized explanations or interpretations of the images. Accordingly, the Court holds that his declaration is permissible as lay witness testimony and thus DENIES the motion to strike as to the Rhodes declaration as improper expert testimony.

**2. Whether the Failure to Disclose Dr. Van Stryland's Testimony was Substantially Justified or Harmless.**

A failure to disclose testimony is not substantially justified, where, as here, the need for such testimony could reasonably have been anticipated. *See Wong v. Regents of the Univ. of Calif.*, 410 F.3d 1052, 1061-62 (9th Cir. 2005). The Court's deadline to serve opening expert reports was May 17, 2006 and the deadline to serve rebuttal expert reports was August 15,

1  2006. (Docket No. 346.) Expert discovery was set to close on September 15, 2006, but was
2  extended to February 25, 2007 due to the injury of Plaintiff's expert. (Docket No. 466.)
3        On February 7, 2005, the Court issued its order on the claims construction and construed
4  the term "the mark is three dimensional" to mean "the mark is controlled in the x-, y-, and z-
5  dimensions." (Docket No. 196.) On May 8, 2006, Plaintiff served its opening expert report on
6  infringement in which Dr. Robert Marc Clement opined that "the shape [of the infringing
7  product] can be controlled in the x-, y-, and z-dimensions, i.e., it is three dimensional." (Docket
8  No. 408 (Expert Report of Dr. Clement) at 5-6.) On August 2, 2005, almost two weeks before
9  the deadline for submitting expert rebuttal reports, Plaintiff filed a copy of Dr. Clement's expert
10 rebuttal report. (Docket No. 381.) In his rebuttal report, Dr. Clement opined that prior art did
11 not meet all the elements of the '496 patent because it was not controlled in the z-dimension.
12 (*Id*.) Plaintiff then formally served a copy of its expert rebuttal report on Crystal Magic on
13 August 15, 2006, over seven months ago. (Declaration of Scott Eads in Support of Opp. to
14 Mot. to Strike, Ex. 6.) Notably, in the 1997 litigation over the original '496 patent, Dr. Clement
15 and Dr. Van Stryland were the experts for the plaintiffs and the defendants, respectively. In
16 1998, Dr. Clement took the same position that he is taking in this case – that the prior art does
17 not meet all the elements of the claims at issue because the marks are not controlled in the z-
18 direction. (Declaration of Elaine Stracker in Support of Opp. to Mot. to Strike ("Stracker Decl.
19 II"), Ex. 1.) Plaintiff represents that the discovery from the 1997 litigation was provided to
20 Crystal Magic as part of the fact discovery in this case, which closed in March 2006. (Opp. to
21 Mot. for Leave at 5.)
22       Based on the above described facts, the Court finds that Crystal Magic has been on
23 notice for quite some time that having control in all three dimensions is an element of the claims
24 at issue and is a significant issue in this litigation. Even if Crystal Magic could have convinced
25 the Court that it could not have been aware of this issue until it received Dr. Clement's rebuttal
26 report in August, which it has not, Crystal Magic has not provided any justification as to why it
27 waited until after Plaintiff filed a motion for summary adjudication to seek to introduce
28 evidence by Dr. Van Stryland in response and waited even longer to seek leave to serve his

1 expert report. The Court thus concludes that Crystal Magic has not demonstrated that its failure
2 to disclose the proffered testimony by Dr. Van Stryland was substantially justified.

Nor does the Court find that Crystal Magic has shown that its failure to disclose was harmless. Crystal Magic did not file Dr. Van Stryland's testimony until after Plaintiff filed its motion for summary adjudication. The deadline to file dispositive motions, as well as the deadline to conduct both fact and expert discovery, have all expired. Although Plaintiff was able to depose Dr. Van Stryland two days before the expert discovery period closed, the deposition occurred after the briefing on Plaintiff's motion was complete.

Plaintiff argues that to properly rebut the new evidence submitted by the Dr. Van Stryland Declaration and proposed expert report, it would need to have fact and expert discovery reopened so it "could determine all the parameters used to generate the marks in the products, exactly how the measurements were made, and whether other measurements were made, such as for example, in the y direction to determine the damage in that direction, and then compare these methods to those used by Crystal Magic in its commercial operations. [Plaintiff] would need to have its expert review the marked products and make its own measurements to verify the accuracy of the measurements provided." (Reply to Mot. to Strike at 7.) After such discovery and investigation, it is likely that Plaintiff would need to depose Dr. Van Stryland again based on the new information and desire an opportunity incorporate such new information in its motion for summary adjudication. The Court thus finds admitting Dr. Van Stryland's untimely expert testimony at this stage in the litigation would not be harmless to Plaintiff. *See Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (upholding exclusion of untimely statements and report by expert submitted in opposition to motion for summary judgment); *Carson Harbor*, 2003 WL 22038700, * 3 (finding that allowing untimely expert evidence submitted in opposition to summary judgment would substantially prejudice defendants because "they would incur significant expense and suffer prolonged proceedings if [the motions for summary judgment] were prolonged to permit discovery and the preparation of appropriate expert rebuttal").

7

Moreover, the pretrial conference is scheduled for April 23, 2007, less than seven weeks away, and the trial is scheduled for May 21, 2007. If the Court were to admit Dr. Van Stryland's testimony, the Court would need to reopen fact and expert discovery, allow additional motions for summary judgment, and continue the scheduled pretrial conference and trial in this four-year old case. Disruption of the schedule of the Court and Plaintiff "is not harmless." *See Wong*, 410 F.3d 1052 at 1062 (finding untimely disclosure of expert witness was not harmless, "even though the ultimate trial date was still some months away" where the deadlines for completing discovery and for filing motions for summary judgment had expired); *see also Chime v. PPG Indus., Inc.*, 402 F.3d 1371, 1381 (Fed. Cir. 2005) (upholding finding of prejudice where admission of untimely expert evidence would have "undermined, if not negated [opposing party's] motion for summary judgment and disrupted the scheduled trial").

Crystal Magic's argument that a finding of bad faith must be found, because striking Dr. Van Stryland's declaration and prohibiting a late report by him would be akin to a dismissal or default judgment, is unavailing. As the Ninth Circuit explained in *Yetti by Molly*, cases requiring a finding of willfulness, fault, or bad faith do not apply to sanctions pursuant to Rule 37(c)(1) where, as here, "although onerous, [is] less than a dismissal." *See Yetti by Molly*, 259 F.3d at 1106 (upholding the exclusion of an expert that "made it much more difficult, perhaps almost impossible" for the defendant to rebut the plaintiff's damages calculations and noting that courts have upheld sanctions under Rule 37 even where a litigant's entire claim or defense has been precluded). Notably, as discussed below, the Court is not granting Plaintiff's motion for summary adjudication in full. Despite the exclusion of Dr. Van Stryland's testimony, Crystal Magic is able defend this infringement action based on its assertion of intervening rights. Accordingly, the Court GRANTS Plaintiff's motion to strike as to Dr. Van Stryland's declaration and DENIES Crystal Magic's motion for leave to serve his untimely expert report.

**B.    Plaintiff's Motion for Summary Adjudication.**

**1.    Applicable Legal Standards.**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Union States Gypsum Co. v.*

1  *Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996). The burden of demonstrating the
2  absence of any genuine issue of material fact rests with the moving party. *SRI Int'l v.*
3  *Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985). In order to defeat summary
4  judgment, the non-moving party must do "more than simply show that there is some
5  metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
6  475 U.S. 574, 586 (1986). Rather, the non-moving party must set forth "specific facts showing
7  that there is a genuine issue for trial." Fed. R. Civ. P. 56(2); *Matsushita Elec.*, 475 U.S. at 587.

### 2. Crystal Magic's Infringement of Claims 5, 23, 29, 45 and 51.

Plaintiff moves for summary adjudication on the issue of infringement of claims 5, 23, 29, 45 and 51 of the '496 patent. Plaintiff submits evidence demonstrating that Crystal Magic's products and methods of making such products practice the invention of these claims and meet all of the elements of these claims. (Stracker Decl. I, Exs. 1, 12-16.) Crystal Magic's only argument in opposition to Plaintiff's motion as to infringement is that the laser marks in Crystal Magic's accused products exhibit random and uncontrolled elongations in the z-dimension. (Opp. to Motion for Summary Judgment at 2.) However, the Court struck the evidence Crystal Magic submitted in support of this argument.[3] Due to the absence of any evidence to create a question of fact as to whether Crystal Magic's products meet all the elements of the claims at issue, the Court GRANTS Plaintiff's motion for summary adjudication as to infringement.

### 3. Crystal Magic's Affirmative Defense of Intervening Rights.

Plaintiff moves for summary adjudication of Crystal Magic's affirmative defense of intervening rights pursuant to 35 U.S.C. § 252 ("section 252"). Section 252 provides:

> The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are substantially *identical*, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially *identical* with the original

---

[3] Although the Court did not strike the declaration of Mr. Rhodes, Mr. Rhodes does not discuss the length of the marks in the z-dimension, let alone opine as to whether such marks are controlled or random in this dimension. Thus, this declaration does not provide supporting evidence to defeat summary adjudication on infringement.

9

> patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.
>
> A reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used ... anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used ... the specific thing so made, purchased, offered for sale, [or] used ... unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use, offer for sale, or sale of the thing made, purchased, offered for sale, [or] used ... as specified, or for the manufacture, use, offer for sale, or sale ... of which substantial preparation was made before the grant of the reissue, and the court may also provide for the continued practice of any process patented by the reissue that is practiced, or for the practice of which substantial preparation was made, before the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

35 U.S.C. § 252 (emphasis added). The intervening rights provided by section 252 also applies to reexamined patents. *See* 35 U.S.C. § 307(b); *see also Fortel Corp. v. Phone-Mate, Inc.*, 825 F.2d 1577, 1579 (Fed. Cir. 1987) ("the reexamination statute, section 307, incorporates both paragraphs of section 252").

"Identical" pursuant to section 252 means "without substantive change." *Seattle Box Co. v. Indus. Crating & Packaging, Inc.*, 731 F.2d 818, 827-28 (Fed. Cir. 1984) ("identical" means "*at most* without substantive change") (emphasis in original). "[I]t is the scope of the claim that must be identical, not that the identical words must be used." *Slimfold Mfg. Co. v. Kindead Indus., Inc.*, 810 F.2d 1113, 1115 (Fed Cir. 1987). As the Federal Circuit explained, the key to determining if the defense of intervening rights applies is "whether a particular change to the claims is substantive, such that the scope of the claims is no longer substantially identical." *Id*. at 1116. The applicable standard is a "reasonable" one, because that implements the purpose of the statute while enabling application to the facts to ensure that justice will be served. *Id*. Thus, pursuant to the defense of intervening rights, if a patent has been reissued or reexamined such that the scope of the claims in the reissued or reexamined patent are substantively changed from those in the original patent, an infringer of the reissued or reexamined patent is protected from liability if the infringing acts occurred prior grant of the reissue or reexamination.

1   The Federal Circuit has made clear that "[w]hen claims are amended during
2   reexamination following a rejection based on prior art, the claims are not deemed substantively
3   changed as a matter of law." *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1362 (Fed. Cir.
4   1991). The court rejected a *per se* rule and instead held that "[t]o determine whether a claim
5   change is substantive, it is necessary to analyze the claims of the original and the reexamined
6   patents in light of the particular facts, including the prior art, the prosecution history, other
7   claims, and any other pertinent information." *Id*. at 1362-63. The court explained that a
8   rejection on prior art during the course of reexamination was not a PTO decision of
9   unpatentability. *Id*. at 1361. Rather, a rejection is merely "part of the prosecution history and
10  its significance depends on the particular facts and circumstances. The reasons for a change in
11  claim language must be considered in determining its estoppel effect." *Id*.

12  Here, both parties have submitted evidence pertinent to the determination of whether the
13  changes to the claims were substantive, including the prosecution history regarding the patent
14  holder's amendment of the claims to overcome a rejection based on prior art, a district court's
15  construction of relevant terms in the original patent, and the inventor's declaration opining on
16  the scope of the changes. The Court concludes such evidence creates a genuine question of
17  material fact as to the scope changes which precludes summary adjudication on the validity of
18  the intervening rights affirmative defense. Accordingly the Court DENIES Plaintiff's motion
19  for summary adjudication as to Crystal Magic's affirmative defense of intervening rights.

## CONCLUSION

21  For the foregoing reasons, the Court (1) GRANTS Plaintiff's motion to strike as to Dr.
22  Van Stryland's declaration and DENIES it as to Mr. Rhodes' declaration; (2) DENIES Crystal
23  Magic's motion for leave to serve rebuttal expert report; and (3) GRANTS Plaintiff's motion
24  for summary adjudication as to infringement and DENIES it as to Crystal Magic's affirmative
25  defense of intervening rights.

26  **IT IS SO ORDERED.**

11

United States District Court
For the Northern District of California

Dated: March 7, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE